**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger**

Civil Action No. 20-cv-00668-MSK

**MARK REED HOLGERSEN,**

     **Plaintiff,**

v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**

     **Defendant.**

---

**OPINION AND ORDER REVERSING AND REMANDING
THE COMMISSIONER'S DECISION**

---

**THIS MATTER** comes before the Court on the Plaintiff's Complaint (**#1**), the Plaintiff's

Opening Brief (**#21**), the Defendant's Response Brief (**#22**), and the Plaintiff's Reply Brief

(**#26**).   For the following reasons, the Commissioner's decision is reversed, and the matter is

remanded for further proceedings.

## I.    JURISDICTION

The Court has jurisdiction over an appeal from a final decision of the Commissioner

under 42 U.S.C. § 405(g).

## II.    BACKGROUND

### A.   Procedural History

Plaintiff Mark Holgersen ("Mr. Holgersen") seeks judicial review of a final decision by

the Defendant Commissioner ("Commissioner") denying his application for disability insurance

benefits ("DIB") pursuant to Title II of the Social Security Act.

1

In November 2017, Mr. Holgersen filed for DIB, claiming that he became disabled as of July 1, 2016.   **(#17-2 at 28)**.   At the initial level of review, a disability adjudicator partially approved Mr. Holgersen's claim by finding him disabled as of January 12, 2018, but not as he had requested as of July 1, 2016.   **(#17-4 at 106-118)**.   Hoping for an earlier disability onset date, Mr. Holgersen requested a hearing before an administrative law judge ("ALJ").   **(#17-2 at 28)**.

On July 11, 2019, an ALJ held a hearing.   **(#17-3 at 54)**.   On July 31, 2019, the ALJ issued his written Decision ("Decision") that denied any benefits based on finding that Mr. Holgersen was not disabled at any time.   **(#17-2 at 38)**.   Effectively, this Decision overturned the administrative determination of disability.   Mr. Holgersen appealed the Decision to the Appeals Council asserting it was not supported by substantial evidence and with submission of additional information, but on January 7, 2020, the Appeals Council denied his Request for Review.   **(#17-2 at 1)**.

Mr. Holgersen now appeals the Decision, as the final agency determination, to this Court. *See Threet v. Barnhart*,   353 F.3d 1185, 1187 (10th Cir. 2003).

**B.   Pertinent Factual Background**

The Court offers only a summary of the facts here, but elaborates as necessary in its discussion.

It is undisputed that on the alleged onset of disability, July 1, 2016, Mr. Holgersen was 59 years old.   **(#17-2 at 46)**.   He had worked as a shipping and receiving clerk, institutional cleaner, and laundry worker.   In 2016, Mr. Holgersen stopped working due to chronic back pain related to a congenital birth defect -- an underdeveloped vertebra and narrow spinal column.

**(#17-3 at 85-88)**.

**Hearing Testimony**

At the hearing before the ALJ, Mr. Holgersen appeared in person and was represented by counsel.   **(#17-3 at 52)**.   He testified that in 2016, he was terminated from his custodial job due to poor performance which was caused by his back pain and inability to stand.   **(#17-3 at 88-89)**.   He stated that he had and has chronic lower back pain that goes down into his right leg, and that he has been taking pain medication since 2012.   **(#17-3 at 82)**.   Mr. Holgersen lives alone and testified he is able to cook and perform household chores.   He is able to go downstairs to do his laundry, but his pain makes going upstairs difficult.   **(#17-3 at 65-66)**.

**Medical Evidence**

Mr. Holgersen asserts that he has both physical and mental impairments that, in combination, render him disabled.

Medical Evidence Related to Physical Impairments

The medical records pertain to Mr. Holgersen's lumbar degenerative disc disease.   On March 30, 2016, Ms. Holgersen underwent a magnetic resonance imaging ("MRI") study.   It revealed: (i) L5-S1 grade 1 spondylolysis with bilateral foraminal narrowing; (ii) congenitally small lumbar spine canal; bulging annuli and ligamentum hypertrophy at L3-4 and L4-5 contributing to mild central stenosis at these levels; and (iii) a small right paracentral disc herniation at L1-2.   **(#17-8 at 324)**.   On November 13, 2017, Mr. Holgersen underwent a second MRI that showed his condition had worsened.   It revealed: (i) a grade 1 anterolisthesis at L5-S1, related to bilateral pars, severely narrowing of the neural foramina and (ii) increased canal narrowing at L3-L4 and L4-L5.   **(#17-8 at 322)**.

Treatment notes from 2015 to 2018 document Mr. Holgersen's ongoing complaints of low back pain radiating down his right leg and numbness in his right foot.   On December 28, 2015, Mr. Holgersen began treatment with Daniel Fellhauer, MD which continued into 2018. (**#17-8 at 281**).   Mr. Holgersen was prescribed opioid pain medication for pain and steroid injections for inflammation.   Dr. Fellhauer's treatment notes reflect tender lower lumbar spine, positive straight leg raise, and reduced range of motion at some visits, however, notes from other treatment visits describe Mr. Holgersen's condition as unremarkable.[1]   (**#17-8 at 287-288, 292, 297, 301, 307, 311-312, 316, 320; #17-9 at 347, 351, 355**).

<u>Medical Evidence Related to Mental Impairments</u>

The treatment record as to Mr. Holgersen's mental impairment is sparse.   The record confirms that Mr. Holgersen suffered from alcoholism and was a chronic opioid user, but there is no documentation that he participated in any mental health treatment.   (**#17-8 at 281, #17-3 at 338-339**).   In conjunction with consideration of his DIB claim record, the agency required a psychiatric consultative examination.   (**#17-4 at 109**).   Colorado DDS referred Mr. Holgersen to psychologist Dr. Richard Madsen to conduct a mental status examination and diagnostic interview.

Dr. Madsen saw Mr. Holgersen on April 12, 2018.   Dr. Madsen conducted a psychological evaluation, which included a diagnostic interview, medical record review, and a mental status examination.   Dr. Madsen observed Mr. Holgersen to be anxious and depressed with excessive, rambling speech.   (**#17-8 at 338**).   During the interview, Mr. Holgersen talked

---

[1]      These results included: non-tender back; full range of motion; no edema; no neurological deficits; and normal sensation, reflexes, coordination, muscle strength, and muscle tone.

about his depression, general anxiety, difficulty concentrating, and decreased energy which stemmed from chronic pain and his inability to work. His mental status examination revealed an anxious and slightly depressed mood and racing thoughts. **(#17-8 at 339)**. Dr. Madsen found Mr. Holgersen to be "functioning in the average range of intelligence" **(#17-8 at 339),** but diagnosed him to be suffering from a persistent depressive disorder that resulted in mental impairment causing moderate and marked limitations in his ability to function in a work environment. Specifically, Dr. Madsen stated that Mr. Holgersen's mental impairments caused (i) moderate limitations in his ability to perform simple and routine tasks and marked limitations in his ability to perform detailed and complex tasks; (ii) moderate to marked limitations maintaining acceptable workplace attendance; (iii) moderate to marked limitations consistently performing work activities; and (iv) moderate to marked limitations completing a normal workday without interruptions from psychiatric conditions. Dr. Madsen also noted that Mr. Holgersen would require additional supervision to perform work-related tasks. **(#17-8 at 339-340)**.

In addition, Dr. Steven Haney, a state agency psychological consultant, reviewed Mr. Holgersen's records. He, too, opined that Mr. Holgersen suffered from a depressive disorder and that this was a mental impairment causing moderate limitations in Mr. Holgersen's ability to: (i) interact with others and (ii) concentrate, persist, or maintain pace. Dr. Haney opined that Mr. Holgersen was capable of performing simple work tasks in 2-hour intervals over an 8-hour work day but that his focus would decrease for more complex tasks. **(#17-4 at 114-115)**.

## C.    The ALJ's Decision

An individual is eligible for DIB under the Social Security Act if he or she is insured, has

not attained retirement age, has filed an application for DIB, and is under a disability as defined

in the Act.   42 U.S.C. § 423(a)(1).   An individual is determined to be under a disability only if

his "physical or mental impairment or impairments are of such severity that he is not only unable

to do his [or her] previous work but cannot, considering his age, education and work experience,

engage in any other kind of substantial gainful work which exists in the national economy …."

42 U.S.C. § 423(d)(2)(A).

In the Decision, the ALJ applied the conventional multi-step analytical approach.   At

step one, the ALJ found Mr. Holgersen engaged in substantial gainful activity through the end of

2016.   Subsequently, there was a 12-month period when he did not engage in substantial gainful

activity.   **(#17-2 at 40)**.   At step two, the ALJ found Mr. Holgersen had severe physical

impairments of lumbar degenerative disc disease and obesity.   **(#17-2 at 40)**.   The ALJ

considered Mr. Holgersen's claim of a mental impairment – major depressive disorder – but

found that it was not severe, finding the opinions of Drs. Madsen and Haney to be

"unpersuasive".   **(#17-2 at 41-42)**.   Instead, the ALJ found that Mr. Holgersen had no more

than mild limitations in all four areas of mental functioning.[2]   **(#17-2 at 41-42)**.

---

[2]        The ALJ's analysis followed the process for evaluating mental impairments, and the
categories of such impairments, as prescribed by the Commissioner's regulations.   These
include the "psychiatric review technique," or "PRT," and the so-called "paragraph B" and
"paragraph C" criteria for describing adult mental disorders.   *See generally* 20 C.F.R. §§
404.1520a(c)–(d); *see also* Social Security Ruling 96-8P, 1996 WL 374184, at *4 (July 2, 1996).
The regulations identify four functional areas in which the ALJ will rate the degree of a
claimant's functional limitations, including: (1) the ability to understand, remember or apply
information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or
maintain pace; and (4) the ability to adapt or manage oneself.   20 C.F.R. § 404.1520a(c)(3).

At step three, the ALJ found that Mr. Holgersen had no impairment that met or medically equaled the presumptively disabling conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. **(#17-2 at 42)**.

The ALJ determined Mr. Holgersen's RFC to be the capacity to:

> perform light work as defined in 20 C.F.R. 404.1567(b) except he can lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand and walk for up to six hours and sit for up to six hours in an eight-hour work day; occasionally climb ramps and stairs but never ladders, ropes, and scaffolds; occasionally stoop, kneel, crouch, and crawl; never work at unprotected heights or around moving and/or dangerous machinery. **(#17-2 at 42)**.

The ALJ made no findings with limitations arising from Mr. Holgersen's mental impairment

At step four, the ALJ found Mr. Holgersen unable to perform his past relevant work. **(#17-2 at 45)**. At step five, based on the testimony of the vocational expert ("VE"), the ALJ concluded that, considering Mr. Holgersen's age, education, work experience, and RFC, he could perform a reduced range of light, semi-skilled jobs in the national economy such as a shipping/order clerk and a shipping checker. **(#17-2 at 46-47)**. The ALJ therefore found Mr. Holgersen was not disabled as defined by the Social Security Act. **(#17-2 at 47)**.

### III.    STANDARD OF REVIEW

Although the Court's review is *de novo*, the Court must uphold the Commissioner's decision if it is free from legal error and the Commissioner's factual findings are supported by substantial evidence. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). Substantial evidence is evidence a reasonable person would accept to support a conclusion, requiring "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Hendron*, 767 F.3d at 954. The Court may not reweigh the evidence; it looks to the entire record to determine if

substantial evidence exists to support the Commissioner's decision. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

## IV.   DISCUSSION

Mr. Holgersen raises several issues in his appeal.   First, he contends the ALJ erred at step two by failing to find a severe mental health impairment.   Second, he makes three challenges to the ALJ's step four determination: (i) the ALJ improperly relied on the opinion of the state agency physician rather than more persuasive evidence in determining he was capable of light work; (ii) the ALJ failed to include appropriate mental health limitations in the RFC finding; and (iii) improperly assessed the mental health medical opinions of record.   Finally, Mr. Holgersen asserts the Commissioner erred in rejecting new evidence submitted to the Appeals Council.   The Court begins its analysis at step two.

## A.   Omission of Severe Mental Disorder at Step Two

Mr. Holgersen contends the ALJ failed to find a severe mental impairment, depressive disorder, at step two of the sequential evaluation.   **(#21)**.

At step two, the ALJ considers the "medical severity of [a claimant's] impairments."   20 C.F.R. § 416.920(a)(4)(ii).   An impairment is severe if it "significantly limits [her] physical or mental ability to do basic work activities".   20 C.F.R. § 404.1520(c).   The purpose of this requirement is for the claimant to "make a threshold showing that his medically determinable impairment or combination of impairments" has a material effect on his job prospects.   *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988); *Langley v. Barnhart*, 373 F.3d 1116, 1123-1124 (10th Cir. 2004); *Wells v. Colvin*, 727 F.3 1061, 1068 (10th Cir. 2013).   Once this threshold is reached for any impairment by making "the de minimis showing of medical severity, the

decision maker proceeds to step three." *Id.* An impairment is not severe if it amounts only to a slight abnormality or mild limitation that would not significantly limit the claimant's physical or mental ability to do basic work activities. *Id.*

At step two, the ALJ found that Mr. Holgersen's depressive disorder was not a severe impairment. **(#17-2 at 40-41)**. It is quite possible that this was error. At step two, an impairment is deemed "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The only evidence of record (the opinions of Dr. Madsen and Dr. Haney) satisfy that minimum standard, and the ALJ points to no evidence to the contrary.

However, in this Circuit, such error is harmless if at step three there is no listing that would apply to it, the ALJ adequately addresses the impairment at step four. *Carpenter*, 537 F.3d at 1265–1266; *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). That is, in effect, what happened here. The ALJ addressed Mr. Holgersen's depression only once, finding it not severe at step two and not subject to a listing at step three, but subject to consideration as a non-severe impairment at step four. Because all impairments, whether severe or not, must be thoroughly considered at step four, the issue becomes whether the ALJ assessment is supported by substantial evidence.

**B.      RFC Determination at Step Four**

Mr. Holgersen makes three challenges to the ALJ's RFC determination.

1.      <u>Omission of Mental Functional Limitations</u>

First, he contends the ALJ failed to account for his mental impairment – major depressive disorder – in fashioning his RFC. The Court agrees this is reversible error.

At step four in the disability analysis, the ALJ is required to assess a claimant's RFC based on all relevant evidence, medical (physical and mental) or otherwise. 20 C.F.R. § 1545. Initially, the impairments, including mental impairments, which an ALJ identifies at steps two and three are distinct from the functional limitations which must be identified and described in an RFC. The RFC finding requires a "more detailed assessment." Social Security Ruling 96-8P, 1996 WL 374184, at *4 (July 2, 1996); *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Bales v. Colvin*, 576 F.App'x 792, 797 (10th Cir. 2014). Findings must be based on all of the relevant evidence and must account for "all of [the claimant's] medically determinable impairments ... including [claimant's] impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(1)–(2). In addition, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts [] and nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting Social Security Ruling ("SSR") 96-8P[3]) (internal quotation marks omitted).

In addition, "mental functions . . . 'are not skills but, rather, general prerequisites for most work at any skill level.'" *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (quoting *Wayland v. Chater*, 76 F.3d 394, 1996 WL 50459, at * 2 (10th Cir. 1996) (table)); *Vialpando v.*

---

[3]      SSR 96-8P provides:

   In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may -- when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim."

   *Id.* at 1996 WL 374184 (July 2, 1996).

*Colvin*, 2015 WL 1433293, at *6 (D. Colo. March 26, 2015) (stating "a limitation of skill level just accounts for issues of skill transfer, not impairment of mental functions …") (citing *Chapo*, 682 F.3d at 1290 n.3). Agency guidance draws the same distinction:

> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job. … Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment.

SSR 85-15, 1985 WL 56857, at * 6.

In this case, the RFC did not incorporate Mr. Holgersen's mental impairment at all, even though the ALJ found at least mild limitations in all four functional areas set forth in 20 C.F.R. § 404.1520a(c)(3): (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentration, persistence, and maintaining pace; and (4) adapting or managing oneself. **(#17-2 at 41)**.

In response, the Commissioner asserts that substantial evidence supports the ALJ's finding that Mr. Holgersen did not have any mental work-related limitations, therefore there was no need to include mental functional limitations in the RFC. **(#22 at 14-16)**.

The Court disagrees. Beginning with the obvious, the Decision states that Mr. Holgersen could perform a reduced range of light, semi-skilled jobs, **(#17-2 at 46-47),** but it is premised solely on physical impairment and does not explain how the limitations caused by Mr. Holgersen's mental impairment (as found by the ALJ) impacted Mr. Holgersen's ability to perform such jobs. **(#17-2 at 41)**. Put simply, in this Circuit, designation of a semi-skilled

position in an RFC does not automatically address limitations as to mental functioning.[4] Without an express discussion of how Mr. Holgersen's limitations due to mental impairments would affect or not affect his ability to perform the jobs described in the RFC, the Decision is deficient, and as a result, the hypothetical question posed to the VE based on the RFC was flawed. *See Chapo*, 682 F.3d at 1291 n.3 ("the failure of [an] ALJ to include his own mental restriction would be fatal to the validity of the hypothetical to the VE" (citing *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000)).

2. ALJ's Evaluation of the Medical Source Opinions

Mr. Holgersen also challenges the ALJ's evaluation of the medical source opinions of record. The parties agree that the SSA's procedures for evaluating medical opinions and prior administrative findings has changed for claims filed after March 27, 2017 and governs Mr. Holgersen's claims in this appeal. **(#21, #22)**. Thus, the Court begins with a brief summary of the changes to the regulations relevant to this appeal.

Effective March 27, 2017, the SSA's revised regulations provide that an "acceptable medical source" includes a licensed (1) physician, (2) psychologist, (3) optometrist, (4) podiatrist; (5) speech pathologist; (6) audiologist; (7) advanced practice registered nurse, and (8) physician assistant.[5] 20 C.F.R. § 416.902 (2018). The new regulations also provide that

---

[4] A number of Tenth Circuit decisions have recognized that an ALJ's limitation to unskilled or simple work may not adequately address a claimant's mental limitations. *See Chapo*, 682 F.3d at 1290 n.3 (listing cases).

[5] The new regulation added audiologists, advanced practice registered nurses, and physician assistants as acceptable medial sources. *Compare* 20 C.F.R. § 416.902(2018) with 20 C.F.R. § 416.902(2016).

particular evidence, including decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements pertaining to issues reserved to the Commissioner, is "inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled". 20 C.F.R. § 416.920b(c) (2018). Thus, the SSA "will not provide any analysis about how we considered such evidence in our determination or decision". *Id.*

The new regulations list five categories of evidence the Commissioner will receive and evaluate: (1) objective medical evidence; (2) medical opinion – a statement from a medical source as to what a claimant can do despite impairments; (3) other medical evidence from a medical source – history, clinical findings, diagnosis, judgments, treatment, and prognosis; (4) evidence from nonmedical sources – any information or statement from a nonmedical source (including the claimant) about any issue as to the claim; and (5) prior administrative medical finding – other than the ultimate determination as to disability. 20 C.F.R. § 416.913 (2018)[6].

---

[6]    As to the definition of medical opinion and prior administrative finding, the regulation further provides:

> (i) Medical opinions in adult claims are about impairment-related limitations and restrictions in:
> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.
> ***
> (5) A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and

The regulations include a new section explaining the process to be used in considering medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017. This provision essentially does away with the prior treating source rule[7] and provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). Rather, the Commissioner must consider each medical source's opinion using the following five factors: (1) supportability; (2) consistency; (3) relationship of source to the claimant; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 416.920c(c). The regulation states that the most important factors in evaluating the persuasiveness of medical source opinions and prior administrative findings opinion are supportability and consistency. 20 C.F.R. § 416.920c(a).

---

State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, such as:

        (i) The existence and severity of your impairment(s);
        (ii) The existence and severity of your symptoms;
        (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; …
        (v) If you are an adult, your residual functional capacity;
        (vi) Whether your impairment(s) meets the duration requirement; and
        (vii) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim.

20 C.F.R. § 416.913(a)(5) (2018).

[7] The prior rule provided that a treating physician's opinion was generally entitled to controlling weight if it was "supported by medically acceptable laboratory and diagnostic techniques and [not] inconsistent with the other substantial evidence in [the] case record." *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (citing 20 C.F.R. § 404.1527(c)(2) (2016)).

The regulation goes on to explain the articulation process for each of these factors. Although a SSA decision must articulate how persuasive an ALJ found all medical opinions and prior administrative medical findings, the ALJ is not required to separately consider every opinion from the same source. The regulation requires the decision to "explain how [it] considered the *supportability* and *consistency* factors for a medical source's opinions or prior administrative medical findings in [the] decision" but, it is "not required to explain how [it] considered the [other three] factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when [it] articulate[s] how [it] consider[s] medical opinions and prior administrative medical findings in [the] case record." 20 C.F.R. § 416.920c(b)(2) (emphasis added). Further, when the Commissioner finds "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported … and consistent with the record … but are not exactly the same", the decision will explain the "other most persuasive factors" set forth in this section. 20 C.F.R. § 416.920c(b)(3). Finally, the regulation does not require the decision to articulate how it considered evidence from nonmedical sources. 20 C.F.R. § 416.920c(d).

In accordance with the new regulations, the Decision addresses Dr. Madsen's and Dr. Haney's opinions and states how the ALJ credited them. (**#17-2 at 40-41**). The ALJ found Dr. Madsen's opinion that Mr. Holgersen's major depressive disorder caused moderate to marked limitations in all areas of mental functioning to be "unpersuasive" because it was inconsistent with his examination results. The ALJ stated that Dr. Madsen's opinion that Mr. Holgersen had moderate to marked limitations in his ability to carry out complex or detailed tasks contradicted an examination exercise in which Mr. Holgersen demonstrated an ability to

count to 40 by threes.    The ALJ also stated that Dr. Madsen's opinion was inconsistent with Mr. Holgersen's own statement at the hearing that he had no mental health issues.    (**#17-2 at 41**).

As to Dr. Haney's opinion that Mr. Holgersen suffered from severe depressive disorder, the ALJ found it "unpersuasive" because it was not supported by any treatment notes or ample citations to the medical records.    Dr. Madsen's opinion recognized that Mr. Holgersen had not sought mental health treatment prior to his assessment, but that treatment records suggested a depressive disorder diagnosis.    (**#17-8 at 338-340**).    Dr. Haney agreed with Dr. Madsen's diagnosis.    (**#17-4 at 110-111**).    Dr. Haney also reviewed Mr. Holgersen's medical records which suggested the diagnosis, but revealed no treatment.

Mr. Holgersen argues that the ALJ impermissibly substituted his lay opinion for those of the two agency medical experts.    As the Tenth Circuit has frequently recognized, the potential for this type of error is greater which an ALJ must assess mental impairments.    In *Winfrey v. Chater*, 92 F.3d 1017, 1022-23 (10th Cir. 1996) and *Miranda v. Barnhart,* 205 F. App'x 638, 641 (10th Cir. 2005), the Tenth Circuit reversed denial of SSA benefits when the ALJ rejected or "second guessed" a mental health professional's diagnosis based on his or her interpretation of the medical evidence.    This may be due, in part, to the invisibility of mental health impairments as compared to physical impairments that can be seen in diagnostic tests and measurements.    It also may be due, in part, to the effect of a mental impairment on the claimant's ability to acknowledge or describe it.    In any event, the caselaw in the Circuit counsels careful and thoughtful regard for medical assessment particularly in the area of mental health impairment and limitations.

Here, there is no medical evidence in the record that is contrary to the unanimous opinions of Dr. Madsen and Dr. Haney that Mr. Holgersen suffered from a depressive disorder. The evidence the ALJ identified as being inconsistent with such opinions is either not evidence or is not inconsistent with such opinions. The absence of records of mental health treatment is not evidence; it is a lack of evidence. And it does not prove that Mr. Holgersen had no mental health disorder, only that there is no record of his treatment for it. Records of treatment could be absent because they were not obtained or because Mr. Holgersen obtained no treatment. But neither situation is necessarily probative of whether Mr. Holgersen suffered from a depressive disorder. With such disorder, he might not have recognized that he had a mental health issue, been embarrassed or otherwise disinclined or financially unable to obtain treatment. Thus the absence of treatment records is not inconsistent with Dr. Madsen's and Dr. Haney's diagnosis – at least as of the time that they considered Mr. Holgersen's condition. Their opinions took into account both Dr. Madsen's examination and testing as well as medical records as of that time.

Similarly, Mr. Holgersen's testimony at the hearing that he has no "mental health issues" is not necessarily inconsistent with Drs. Madsen's and Haney's diagnosis. Mr. Holgersen is not competent to render a medical opinion as to his own condition. That is akin to a claimant denying that his leg is broken even though the X-ray and the doctor have said that it is.

Finally, the ALJ's interpretation of the results of **one** mathematical test administered by Dr. Madsen is problematic. It looks to be a substitution of the ALJ's lay assessment of test results for Dr. Madsen's medical assessment. But putting that aside, the Decision fails to

explain how the ability to count to 40 by threes in less than 30 seconds is inconsistent with Dr. Madsen's opinion that Mr. Holgersen had moderate to marked limitations in his ability to carry out complex tasks.

In sum, the Decision fails to identify specific and legitimate reasons based on substantial evidence in the record necessary to reject the consistent, and only medical opinions addressing to Mr. Holgersen's mental health condition. Instead, it appears that the ALJ substituted his lay assessment of the evidence to fashion his own opinion in opposition to that of the mental health experts. This constitutes reversible error.

Finally, Mr. Holgersen contends that as to his physical impairments, the ALJ erred in finding the opinions of the state agency medical consultant, Dr. Rubio, more persuasive than the opinions of his treating provider, Dr. Fellhauer. Because Dr. Fellhauer's medical source statement was not submitted by Mr. Holgersen until August 8, 2019 it was never before the ALJ for consideration, and thus there was no comparison of opinions by the ALJ.[8] Instead, this argument is best viewed through Mr. Holgersen's objection to the Appeals Council's decision not to consider Dr. Fellhauer's opinion.

## C.    Additional Evidence Submitted to the Appeals Council

As noted above, Mr. Holgersen argues that the Appeals Council erred in denying his

---

[8]    On April 23, 2018, as part of the initial claims review process, Dr. Rubio opined Mr. Holgersen could perform a limited range of light exertional work. **(#17-4 at 106)**. Dr. Rubio based his opinion upon his review of the medical records, which largely consisted of Dr. Fellhauer's treatment notes. In the Decision, the ALJ found this opinion "persuasive" because it was consistent with the "totality of the evidence" including the following record evidence: (i) objective 2016 and 2017 MRI evidence reflecting a worsening narrowing of the spinal canal and (ii) Dr. Fellhauer's examination results showing occasional positive straight leg raise and tender back. **(#17-2 at 44)**. Accordingly, the RFC incorporated Dr. Rubio's opined physical limitations.

request for review of Dr. Fellhauer's opinions dated August 8, 2019 through August 20, 2019. The reason given by the Council was because it did not "show a reasonable probability that it would change the outcome of the decision."   **(#17-2 at 1-2)**.

Pursuant to 20 C.F.R. §404.970(a), the Appeals Council will consider the evidence in the ALJ hearing record and any "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."   In this Circuit, "the Appeals Council must consider additional evidence offered on administrative review—after which it becomes a part of our record on judicial review—if it is (1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision."   *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)). However, the question of whether evidence is "new, material and chronologically pertinent is a question of law subject to [the court's] *de novo* review."   *Threet v. Barnhart,* 353 F.3d 1185, 1191 (10th Cir. 2003).

When the Appeals Council rejects new evidence as non-qualifying as it did here and the claimant challenges that ruling on judicial review, the Court normally reviews the matter *de novo* to determine whether the Appeals Council erroneously rejected the evidence.   *Krauser*, 638 F.3d at 1328.   However, in this particular circumstance, the Court need not engage in that analysis. *Id.*   As set forth above, this matter must be remanded to the Commissioner for further proceedings in light of another error – failure to properly evaluate and account for the evidence of mental impairment.   Remand will extend the potential period of disability through the next date of decision, *see* 20 C.F.R. §§ 404.620(a), 416.330 (providing that applications for disability

benefits remain in effect until ALJ issues final decision); *id*. §§ 404.984(a), 416.1484(a) (providing that, if case is remanded by courts for further consideration, the ALJ's decision on remand becomes the final decision of Commissioner).   Accordingly, the ALJ should consider the impact of the late submitted evidence – Dr. Fellhauer's medical source statement -- on the determination of disability for that additional period.   *Id.*

## V.   CONCLUSION

In summary, the Court finds the ALJ's omission of any mental limitations in the RFC and evaluation of the mental medical source opinions contravenes applicable legal standards and thus, the disability conclusions at step two, three, four and five of the sequential analysis are not supported by substantial evidence.   Thus, the finding that Mr. Holgersen is not disabled is reversed, and the matter is remanded for reconsideration at steps two, three, four, and five of the sequential analysis, applying the proper legal standards to the ALJ's formulation of Mr. Holgersen's RFC and the evaluation of the mental medical source opinions.   Also on remand, the ALJ must consider the impact of Dr. Fellhauer's medical source opinion.   The Court expresses no opinion as to the ultimate determination of whether Mr. Holgersen is or should be found to be disabled.

The Commissioner's decision is **REVERSED AND REMANDED.**   Upon reconsideration, the Commissioner shall consider all pertinent evidence through the 2019 hearing date and the new evidence -- Dr. Fellhauer's medical source opinion.   Judgment shall enter in favor of Mr. Holgersen.

Dated this 12th day of July, 2021.

BY THE COURT:

Marcia S. Krieger
Senior United States District Judge